**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

M.G., a minor, by and through his parent and
natural guardian R.G.; G.J., a minor, by and
through his parent and natural guardian, C.J., on
behalf of themselves and a class of those
similarly situated; and BRONX
INDEPENDENT LIVING SERVICES, a
nonprofit organization,

                Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION; THE CITY OF NEW YORK;
RICHARD A. CARRANZA, in his official
capacity as Chancellor of the New York City
Department of Education,

                Defendants.

Case No. 17-cv-05692 (PGG) (KNF)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED**
**MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF**
**SETTLEMENT**

DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel:  (212) 644-8644
Fax:  (212) 644-8636
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND OF THE CASE AND PROCEDURAL HISTORY.............................. 3

III.  SUMMARY OF THE SETTLEMENT ..................................................................... 4

     A.    Modifications to the DOE's Policies, Practices, and Procedures ........................... 4

     B.    Monitoring ......................................................................................... 5

     C.    Additional Provisions........................................................................... 5

IV.   LEGAL ARGUMENT............................................................................................ 6

     A.    The Proposed Class Should Be Certified.............................................................. 6

          1.    The Proposed Class.................................................................. 7

          2.    The Proposed Class Meets the Numerosity, Commonality,
               Typicality, and Adequate Representation Requirements of
               Rule 23(a), and the Implied Requirement of
               Ascertainability....................................................................... 8

          3.    The Proposed Class Satisfies the Numerosity Requirement...................... 8

          4.    The Proposed Class Satisfies the Commonality
               Requirement............................................................................ 9

          5.    The Class Representatives Satisfy the Typicality
               Requirement............................................................................ 10

          6.    The Class Representatives and Counsel Satisfy the
               Adequacy Requirement............................................................ 12

          7.    The Proposed Class Is Readily Ascertainable. ......................................... 13

          8.    The Proposed Class Meets the Requirements of Rule
               23(b)(2). ................................................................................. 14

     B.    Preliminary Approval of the Proposed Settlement Agreement Is
          Proper................................................................................................ 15

           1.    The Settlement Provides Substantial Benefits to the Class
               While Avoiding Unnecessary Litigation and Delay. ............................... 17

          2.    The Settlement Is Fair, Adequate, and Reasonable. ................................. 18

3. The Settlement Was Crafted by Experienced Counsel for Both Plaintiffs and Defendants. ............................................. 19

C. The Court Should Direct Distribution of the Notice of Settlement. ...................... 19

D. The Court Should Approve the Proposed Scheduling Order. .............................. 21

V. CONCLUSION ................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Baby Neal for and by Kanter v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ................................................... 10

*Battle v. Liberty Nat. Life Ins. Co.,*
    770 F. Supp. 1499 (N.D. Ala. 1991) ................................. 16

*Bronx Indep. Living Servs., et al. v. Metro. Trans. Auth., et al.,*
    No. 1:16-cv- 05023 (S.D.N.Y. Apr. 25, 2018) .................. 13

*Brooklyn Ctr. For Indep. Of the Disabled v. Bloomberg,*
    290 F.R.D. 409 (S.D.N.Y. 2012) ........................... 12, 13, 14

*Butto v. Collecto Inc.,*
    290 F.R.D. 372 (E.D.N.Y. 2013) .......................................... 9

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013) ............................................... 16

*Christopher Noel, et al. v. N.Y.C. Taxi and Limousine Comm'n,*
    No. 11-CV-0237 (S.D.N.Y. Sept. 29, 2015) ..................... 13

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ............................................... 16

*Clark v. Ecolab, Inc.,*
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) .................. 15

*Cohen v. J.P. Morgan Chase & Co.,*
    262 F.R.D. 153 (E.D.N.Y. 2009) ...................................... 15

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ................................................... 8

*Ctr. for Indep. of the Disabled, et al. v. Metro. Trans. Auth., et al.,*
    No. 1:17-cv-02990 (Nov. 3, 2017) .................................... 13

*Daniels v. City of New York,*
    198 F.R.D. 409 (S.D.N.Y. 2001) ........................................ 9

*E.E.O.C. v. Bell Atl. Corp.,*
    WL 31260290 (S.D.N.Y. Oct. 9, 2002) ............................ 19

*Floyd v. City of New York,*
    283 F.R.D. 153 (S.D.N.Y. 2012) ......................................... 8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .................................................................................... 16

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)*
   *Litig.*, 281 F.R.D. 134 (S.D.N.Y. 2012) ................................................................... 7

*In re McDonnell Douglas Equip. Leasing Secs.*,
   838 F. Supp. 729 (S.D.N.Y. 1993) ......................................................................... 19

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................... 15

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) .............................................................................. 8, 13

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) .............................................................................. 14

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) .............................................................................. 16

*Ligon v. City of New York*,
   288 F.R.D. 72 (S.D.N.Y. 2013) .............................................................................. 14

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................................... 9, 10

*Marisol A. by Forbes v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996) ........................................................................ 9, 11

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) .................................................................................. 15

*Mba v. World Airways, Inc.*,
   369 F. App'x 194 (2d Cir. 2010) ............................................................................ 15

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) ......................................................................... 10, 11

*R.A.G. ex rel R.B. v. Buffalo City Sch. Dist. Bd. Of Educ.*,
   569 Fed. App'x 41 (2d Cir. 2014) ........................................................................... 14

*Ramirez v. Riverbay Corp.*,
   39 F. Supp. 3d 354 (S.D.N.Y. 2014) ......................................................................... 7

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .................................................................................. 10

*Stinson v. City of New York*,

282 F.R.D. 360 (S.D.N.Y. 2012) ................................................................... 12, 14

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008) ............................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................. 6, 7, 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................................ 16

**Statutes**

20 U.S.C. § 1400 ............................................................................................ 3

29 U.S.C. § 794 .............................................................................................. 3

42 U.S.C. § 12101 .......................................................................................... 3

N.Y.C. Admin. Code § 8-101 ........................................................................ 3

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................... 8

Fed. R. Civ. P. 23(a)(1) .................................................................................. 8

Fed. R. Civ. P. 23(a)(4) ................................................................................ 12

Fed. R. Civ. P. 23(b)(2) ............................................................................ 7, 14

Fed. R. Civ. P. 23(c)(2) ................................................................................ 19

Fed. R. Civ. P. 23(e) ..................................................................................... 15

Fed. R. Civ. P. 23(h) ..................................................................................... 19

## I. INTRODUCTION

After more than two years of negotiations, the Parties have reached a proposed resolution of the issues raised in Plaintiffs' Complaint concerning the issuance, administration, and utilization of Related Service Authorization ("RSA") vouchers to provide related services to students with Individualized Education Programs ("IEPs") in New York City Department of Education ("DOE") schools in the Bronx. Related services include speech therapy, occupational therapy, physical therapy, and counseling, among other services that many students with disabilities need to have equal access to public education.

The resulting Settlement Agreement ("Settlement Agreement" or "Agreement") with Defendants DOE and Richard A. Carranza, in his official capacity as the Chancellor of the DOE, (collectively, "DOE" or "Defendants") is fair, reasonable, and adequate, largely resolves the issues raised in Plaintiffs' Complaint, and was the product of thorough arm's length negotiations, which included engaging a joint expert, many in-person settlement meetings between experienced and knowledgeable counsel, exchanges of information, and numerous rounds of settlement proposals. Under the Settlement Agreement, Declaration of Stuart Seaborn ("Seaborn Decl."), Ex. 4, the DOE will modify its policies, practices, and procedures to increase its capacity to provide related services in its Bronx schools through its own network of providers. These modified policies, practices, and procedures will decrease the need for the DOE to use RSA vouchers to provide related services to students with disabilities in the Bronx, and, when RSA vouchers are necessary, the safeguards outlined in the Agreement will ensure that the vouchers are issued in a timely manner and with sufficient support to families to increase the likelihood that the vouchers result in the timely provision of related services.

The Settlement Agreement also provides for comprehensive reporting and monitoring. Plaintiffs' counsel will monitor the Defendants' compliance throughout the Term of the

Settlement Agreement. The Settlement will terminate after the three school years of the Agreement term have elapsed and a final Monitoring Report has been issued.

The Settlement Agreement is conditioned on certification of a class of impacted students (the "Class"), as described at Section IV(A). Class certification is appropriate because the DOE policies, practices, and procedures addressed, including those concerning the DOE's issuance, administration, and utilization of RSA vouchers, are applicable to all Class members. Similarly, the modifications to current policies, practices, and procedures concerning DOE staffing and make-up services in the Settlement Agreement will benefit all Class members.

Because the proposed Settlement Agreement is fair, adequate, and reasonable, and is the product of serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel, the Settlement Agreement satisfies all of the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. Additionally, the Parties' proposed Notice and schedule for a Fairness Hearing will allow Class members an adequate opportunity to review and comment on the Settlement Agreement and is consistent with the Parties' desire for prompt implementation of the Settlement Agreement.

Accordingly, the Parties ask that the Court: (i) preliminarily approve the Settlement Agreement, (ii) approve the proposed form of the Class Notice and distribution plan, and (iii) set a date for a Fairness Hearing. The Parties' counsel have negotiated the Notice and Short Form Notice, Seaborn Decl., Ex. 4 (Settlement Agreement) at Ex. A., and agree to the form and content. The proposed Class will, upon final approval, release claims for systemic injunctive and declaratory relief relating to the subject matter of the Complaint, including claims under the Individuals with Disabilities Education Act ("IDEA") and New York City Human Rights Law

("NYCHRL"). The proposed Class will not release claims relating to their individual educational rights.

## II.  BACKGROUND OF THE CASE AND PROCEDURAL HISTORY

Plaintiffs filed this civil rights class action lawsuit on July 27, 2017. The Complaint alleged that the DOE's administration of RSA vouchers issued for certain students with IEPs enrolled in DOE schools in the Bronx violates the IDEA, 20 U.S.C. § 1400, *et seq*., Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, ("Section 504"), and the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq. Under the current system, the DOE issues RSA vouchers to families when it is unable to locate a related services provider in its own provider network. In many instances, including in the experiences of the individual Plaintiffs, the DOE then fails to provide support to families to assist them with navigating the process of locating an independent provider who is willing to accept a voucher and travel to the Bronx to provide services. As a result, a high percentage of RSA vouchers in the Bronx are not used, leaving students without these crucial services. *See* Seaborn Decl., Ex. 3 (Public Advocates' 2017 Report).

On February 7, 2018, Plaintiffs and the DOE entered into a structured negotiation agreement under which Dr. Kristie Patten was retained as a joint expert for the purpose of offering her findings and recommendations to be used to attempt to reach a settlement of this action. The DOE provided necessary access and information to Dr. Patten for her to evaluate DOE policies, practices, and procedures regarding this issue. On January 6, 2019, Plaintiffs and the DOE received Dr. Patten's final report. The parties subsequently engaged in extensive settlement negotiations including numerous in-person settlement meetings and many rounds of settlement proposals. The resulting Settlement Agreement hews closely to Dr. Patten's recommendations and provides broad injunctive relief for the proposed Class.

III.    **SUMMARY OF THE SETTLEMENT**

      The Settlement Agreement seeks to address the issues identified in Plaintiffs' Complaint by decreasing the reliance on RSA vouchers through increasing the DOE's capacity to provide services through DOE providers, and by ensuring that the DOE provides appropriate notice and support to families who do receive RSA vouchers.

A.    <u>**Modifications to the DOE's Policies, Practices, and Procedures**</u>

      The Agreement's broad remedial structure requires the DOE to do the following:

- Allocate sufficient funding by the summer preceding each school year of the Agreement period to support offers of employment for projected full-time occupational therapy ("OT"), physical therapy ("PT"), speech therapy, and counseling positions at DOE schools in the Bronx for the ensuing school year;

- Increase the number of OT supervisors in the Bronx;

- Increase funding to the DOE's Related Service Scholarship and Loan Forgiveness Program to increase the DOE's ability to recruit degree candidates in certain related services fields to seek and maintain employment with the DOE;

- Ensure functions relevant to related service case management and tracking are included in the data management system for which the DOE is currently evaluating proposals to replace its current system;

- When neither a DOE nor contract agency provider can be identified, take steps to issue RSA vouchers by the 16th school day of each school year, or by the 16th school day after the relevant effective date of a new IEP following an initial referral;

- Establish procedures for identifying make-up related service providers and an email address for parents to request such services;

- Continue the Saturday Site program for OT and Speech services in the Bronx and begin that program each school year by an agreed-to date;

- Appoint non-school based RSA Liaison(s) to support the school in assisting class members' parents in locating an RSA provider and establish procedures for how this support will be provided;

- Notify principals of DOE Bronx schools and designated RSA Liaisons of their obligation to provide assistance to parents of class members who receive an RSA;

- Establish requirements for the notice given to parents of students who have received an RSA, including that the notice describe how the DOE will support the parent through the RSA process and procedures for ensuring that parents receive this notice;

- Provide P311 with accurate information on the RSA process as an additional source of support for parents who need assistance with this process;

- Take steps to ensure the accuracy of the RSA Provider List and to add additional detail regarding providers' geographic preferences; and

- Implement the Vendor Contract pilot project as potential means of incentivizing independent providers to provide related services to DOE students in the Bronx.

**B.**    **Monitoring**

Additionally, Plaintiffs will monitor the DOE's compliance with the Settlement Agreement. The DOE has agreed to provide Plaintiffs' counsel with confidential annual reports. The reports will include data on the number of students at Bronx DOE schools with related service mandates on their IEPs, the number of students not assigned a related service provider by the 16th and 25th day of school, the number of related service mandates for which the DOE issued an RSA by the 16th, 25th, and 100th day of school, the percentage of RSA vouchers that were never used, a variety of other data, and confirmation that the DOE has complied with various provisions of the Settlement Agreement (e.g. increasing the number of OT supervisors).

The DOE has also agreed to conduct a survey using a random sampling of parents of Class members issued an RSA, and the DOE will share the results of this survey as part of its confidential annual report to Plaintiffs' counsel. The parties have agreed to a dispute resolution procedure should Plaintiffs identify any areas of substantial noncompliance with the Agreement. The monitoring will continue throughout the three full school years of the Settlement Agreement.

**C.**    **Additional Provisions**

In addition to the provisions above, the Agreement includes the following provisions:

- The term of the Agreement is three full school years.

- The DOE has agreed to provide Named Plaintiffs M.G. and G.J. with make-up OT services for the services each missed pursuant to an RSA and $2,000 each in class representative service awards.

- The following claims are released:

  o Plaintiffs and the Class, including the organizational Plaintiff Bronx Independent Living Services, release any claims for systemic injunctive relief regarding the systemwide administration of the RSA system in the Bronx at issue in this Lawsuit, that arose on or before the Effective Date of the Agreement;

  o The Named Plaintiffs, M.G. and G.J., release any claims for compensatory services for OT services that were not provided by the DOE in connection with the RSAs at issue in the Complaint or any other RSA issued to M.G. or G.J. prior to the filing of the Complaint, but do not release any other claims for compensatory services;

  o Class members release any claims for compensatory services for missed related services in connection with RSAs that were issued on or between July 27, 2015, and the Termination Date of this Agreement that they request and actually receive through the mechanism described in the Agreement. Class members do not release any other individual claims.

- DOE agrees that Plaintiffs are entitled to attorneys' fees and costs as though they are prevailing parties. The parties have agreed to negotiate the amount of fees incurred. If the parties are unable to resolve this issue, the parties may seek assistance from a private mediator or Plaintiffs' counsel may submit an application for counsel fees to the Court. The DOE has also agreed that Plaintiffs are entitled to reasonable attorneys' fees and costs for monitoring and enforcing the terms of the Agreement.

## IV.    LEGAL ARGUMENT

### A.    <u>The Proposed Class Should Be Certified.</u>

Plaintiffs seeking to certify a class under Federal Rule of Civil Procedure 23 must satisfy

all four elements of Rule 23(a) and at least one of the three categories described in Rule 23(b).

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). In this instance, Plaintiffs seek

certification under subdivision (b)(2), which provides that class certification is warranted if "the

party opposing the class has acted or refused to act on grounds generally applicable to the class,

6

thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Each requirement set forth in Rule 23(a) must be met by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) (clarifying that a preponderance of the evidence is the threshold for determining whether a class merits certification under Rule 23). "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). However, the "court should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (quoting *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)); *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 140–41 (S.D.N.Y. 2012).

1.    The Proposed Class

Consistent with Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs respectfully request that the Court certify the following class:

> All students with individualized education programs ("IEPs") (a) who, during the period from July 27, 2015, to the last day of the Court's jurisdiction to enforce this Agreement, including any extensions thereof ("Ending Date"), attend, have attended, or will attend public schools operated by the New York City Department of Education ("DOE") and located in the Bronx; (b) whose IEPs include recommendations for one or more related services, as defined in this Agreement, or did recommend such services during the period between July 27, 2015, and the Ending Date; and (c) who are eligible to receive related services under the Individuals with Disabilities Education Act. Students with IEPs who attended a DOE public school located in the Bronx between July 27, 2015, and March 13, 2020, but as of the date of this Agreement do not attend a DOE public school located in the Bronx, must have had an RSA issued on or after July 27, 2015, while they attended a DOE school in the Bronx, but did not receive their related services pursuant to

such RSA during the period between July 27, 2015, and March 13, 2020.

2.    The Proposed Class Meets the Numerosity, Commonality, Typicality, and Adequate Representation Requirements of Rule 23(a), and the Implied Requirement of Ascertainability.

Under Rule 23(a), class certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the express requirements of Rule 23(a), the Second Circuit recognizes an implied requirement of ascertainability, which requires that the description of the proposed class be sufficiently definite. *In re Petrobras Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017). However, this implied requirement is less applicable to Rule 23(b)(2) classes because "[i]t would be illogical to require precise ascertainability in a suit that seeks no class damages." *Floyd v. City of New York*, 283 F.R.D. 153, 172 (S.D.N.Y. 2012).

3.    The Proposed Class Satisfies the Numerosity Requirement.

Rule 23(a)(1) requires classes to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has determined that numerosity is "presumed" when a class contains at least forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the number of potential class members is far greater than forty. For example, according to the New York City Public Advocates' 2017 Report on the RSA System in the Bronx, 129 RSAs were issued to students in District 8 in the Bronx, 365 were issued to students in District 9, and 523 were issued to students in District 10. Seaborn Decl., Ex. 3. at Appendix A. The DOE also issued hundreds of additional RSAs to students elsewhere in the Bronx. *Id*. With

at least hundreds of members, the proposed class easily satisfies the numerosity requirement of
Rule 23(a)(1).

    4.    <u>The Proposed Class Satisfies the Commonality Requirement.</u>

Commonality required by Rule 23(a)(2) is satisfied when at least one question of law or
fact is common to all class members. *Marisol A. by Forbes v. Giuliani ("Marisol II")*, 126 F.3d
372, 376 (2d Cir. 1997). "The commonality requirement . . . does not mandate that all class
members share identical claims," *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y.
2001) and the "individual circumstances of the class members may differ without precluding
class certification." *Butto v. Collecto Inc.*, 290 F.R.D. 372, 392 (E.D.N.Y. 2013). The
Supreme Court has stated that "[w]hat matters to class certification . . . is not the raising of
common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to
generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*,
564 U.S. at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate
Proof, 85 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in the original). Furthermore, the District
Court in *Marisol I* explained that injunctive actions, by their very nature, often satisfy Rule
23(a)(2), because the relief is applicable to the class as a whole. *Marisol A. by Forbes v. Giuliani
("Marisol I")*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd Marisol II*, 126 F.3d at 372.

Here, the proposed Class satisfies the commonality requirement because Plaintiffs have
articulated a common issue of law, namely, whether the DOE's policies and practices for the
provision of related services to eligible students in the Bronx violate the substantive and
procedural rights of the proposed class members—rights guaranteed to students with IEPs under
the IDEA. All proposed Class members are entitled to the provision of related services through
their IEPs, and thus all are subject to this set of policies and procedures. Plaintiffs have also
articulated a common issue of fact—whether, by failing to maintain adequate systems for

9

ensuring the provision of related services to students in the Bronx, Defendants have systemically

failed to provide those students the services to which they are entitled under the law.

Furthermore, the systemic injunctive relief sought creates the kind of "answer" contemplated by

*Wal-Mar Stores Inc. v. Dukes*.

Because commonality is established when a single, common issue of law or fact is raised,

and the proposed class has raised such common issues, the proposed class has met the

commonality requirement of Rule 23(a)(2).

     5.     <u>The Class Representatives Satisfy the Typicality Requirement.</u>

For similar reasons, the proposed Class representatives' claims are typical of the

proposed Class members they seek to represent, and therefore the Class representatives satisfy

Rule 23(a)(3). Although these are distinct requirements, analysis of typicality and commonality

tend to merge, as similar considerations underlie the two. *Marisol II*., 126 F.3d at 376.

Commonality is similar to numerosity, in that both evaluate the sufficiency of the class as a

whole, while typicality is similar to adequacy of representation, in that the latter two evaluate the

sufficiency of the named plaintiffs. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d

Cir. 1994) (citing *Hassine v. Jeffes*, 846 F.2d 169, 177 n.4 (3d Cir. 1988)). When the same

conduct is alleged to have "affected both the named plaintiff and the class sought to be

represented, the typicality requirement is usually met irrespective of minor variations in the fact

patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.

1993); *see also Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001) ("Under this elastic

standard named plaintiffs can represent class members who suffer different injuries so long as all

of the injuries are shown to result from the same practice.") Moreover, there is "ample basis" for

a finding of typicality where the relief plaintiffs seek is injunctive or declaratory. *Marisol I*, 929

F. Supp. at 691; *Nicholson*, 205 F.R.D. at 100.

10

Proposed class representatives' claims are typical of the class. Both individual Plaintiffs are students with disabilities who live in the Bronx and are currently entitled to receive related services, have received RSA vouchers in the past, and are at risk of receiving RSA vouchers again in the future, and organizational Plaintiff Bronx Independent Living Services ("BILS") has constituents who are Bronx residents who receive related services and either have received RSA vouchers or are at risk of receiving RSA vouchers in the future. Thus, all are subject to the DOE's policies regarding the provision of RSA services and its voucher program.

For example, similar to members of the proposed class, proposed representatives M.G. and G.J. are both students with disabilities who live in the Bronx and are entitled to receive related services on their IEPs. Declaration of R.G. ("R.G. Decl.") ¶¶ 3, 5, 7, 18; Declaration of C.J. ("C.J. Decl"), ¶¶ 3, 4, 11. Both previously received RSA vouchers that they were ultimately unable to use to receive OT. R.G. Decl. ¶¶ 7–12; C.J. Decl. ¶¶ 7–9. Both also remain at risk of receiving one or more additional RSA vouchers in the future. R.G. Decl., ¶¶ 17–18; C.J. Decl. ¶ 11. Plaintiff G.J. remains a student at a DOE school in the Bronx and continues to be entitled to related services under his IEP. C.J. Decl. ¶ 11. Plaintiff M.G. currently attends a non-public school paid for by the DOE, but is nonetheless at risk of receiving an RSA in the future if he were to return to a DOE school. R.G. Decl. ¶ 17–18.

Additionally, proposed class representative BILS serves people with disabilities in the Bronx, including the families of students with disabilities who attend DOE schools in the Bronx who have either received RSA vouchers or who are at risk of receiving RSA vouchers in the future, should the DOE be unable to locate related services providers for them. Declaration of Brett Eisenberg ("Eisenberg Decl.") ¶¶ 4–7.

The policies and practices at issue for provision of related services apply equally to all

students with related services on their IEPs who attend DOE schools in the Bronx. Whether or not those students actually receive an RSA or are merely at risk of receiving an RSA, all Class members are affected by this same system. Thus, the proposed Class representatives' claims are typical of the Class' claims. Further, the proposed Class representatives seek only injunctive and declaratory relief to remedy systemic deficiencies. For these reasons, they easily meet Rule 23(a)(3)'s typicality requirement.

6.    The Class Representatives and Counsel Satisfy the Adequacy Requirement.

Rule 23(a)(4) requires representative plaintiffs and class counsel to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if adequacy has been met, this Court examines two factors: whether "1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) [plaintiffs'] attorneys are qualified, experienced and able to conduct the litigation." *Brooklyn Ctr. For Indep. Of the Disabled v. Bloomberg*, 290 F.R.D. 409, 419 (S.D.N.Y. 2012). "In order to defeat class certification, there must be a showing of a genuine conflict between the proposed class representative's interests and those of the other members of the class, and only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Stinson v. City of New York*, 282 F.R.D. 360, 371 (S.D.N.Y. 2012) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp*., 222 F.3d 52, 60 (2d Cir.2000)). Absent evidence to the contrary, adequate representation is usually presumed. *See Newberg on Class Actions* § 3:55 (5th ed. updated Dec. 2020).

Here, the individual Plaintiffs are dedicated to protecting the interests of the class and achieving the common goal of all class members. R.G. Decl. ¶ 19, C.J. Decl. ¶ 12. Additionally, organizational plaintiff BILS works to improve the lives of Bronx residents with disabilities and has expended time and resources working with families facing difficulties navigating the special education process. Eisenberg Decl. ¶¶ 3–8.

12

Disability Rights Advocates ("DRA"), proposed Class counsel, clearly meets the requirements of Rule 23(a)(4) as well. DRA is a nonprofit law firm with extensive experience litigating class action lawsuits involving disability rights and has served as lead counsel in dozens of disability civil rights class actions since DRA's founding in 1993. Seaborn Decl. ¶¶ 4–5. The qualifications, resources, and experience of the proposed class counsel are more than sufficient to satisfy the demands of Rule 23(a)(4). *See, e.g.*, *Bronx Indep. Living Servs., et al. v. Metro. Trans. Auth., et al.*, No. 1:16-cv- 05023 (S.D.N.Y. Apr. 25, 2018) (order granting class certification on behalf of all persons with mobility disabilities who cannot currently use the Middletown Road subway station because of accessibility barriers at that station, and naming DRA as class counsel); *Ctr. for Indep. of the Disabled, et al. v. Metro. Trans. Auth., et al.*, No. 1:17-cv-02990 (Nov. 3, 2017) (stipulation and order certifying a class of persons who have a disability that requires them to use an elevator to access the subway system, and naming DRA as class counsel); *Bloomberg*, 290 F.R.D.at 419 (certifying DRA as class counsel in a case alleging systemic failures to address the needs of more than 800,000 persons with disabilities during disaster and emergency preparedness planning); *Christopher Noel, et al. v. N.Y.C. Taxi and Limousine Comm'n*, No. 11-CV-0237 (S.D.N.Y. Sept. 29, 2015) (advising court of stipulation of settlement in case in which DRA represented a class of people with mobility disabilities alleging the denial of meaningful access to New York City taxicabs).

> 7.    The Proposed Class Is Readily Ascertainable.

Although the Second Circuit has recognized a "modest threshold requirement" of ascertainability in various cases, *see In re Petrobras Sec.*, 862 F.3d at 269, "[i]t is not clear that the ascertainability requirement applies to Rule 23(b)(2) class actions [. . .] as notice is not obligatory and the relief sought is injunctive rather than compensatory." *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D at 419 n.3; *see also Ligon v. City of New York*, 288 F.R.D. 72, 83

(S.D.N.Y. 2013) ("Rule 23 does not demand ascertainability. The requirement is a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason."); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012) ("[T]he ascertainability requirement is less important in a Rule 23(b)(2) class, since a chief objective of this rule is to provide broad injunctive relief to 'large and amorphous' classes not capable of certification under Rule 23(b)(3)" (quoting *Marisol II*, 126 F.3d at 378)).

Even if ascertainability is required here, the proposed class easily meets this standard. While a class must be ascertainable, the standard for ascertainability is not demanding. *Stinson*, 282 F.R.D. at 373. Whether a student is enrolled at a DOE school in the Bronx or was in the past during the relevant time period, has an IEP, and is entitled to receive related services under their IEP are straightforward, factual inquiries based on objective criteria and easily determined through the production of educational records, all within the DOE's possession and control.

8.    The Proposed Class Meets the Requirements of Rule 23(b)(2).

Certification under Rule 23(b)(2) is appropriate where plaintiffs allege that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Second Circuit has also found class certification to be appropriate where plaintiffs seek to address school policies. *See e.g.*, *R.A.G. ex rel R.B. v. Buffalo City Sch. Dist. Bd. Of Educ.*, 569 Fed. App'x 41 (2d Cir. 2014).

Here, Plaintiffs allege that Defendants have devised policies and engaged in practices pertaining to the provision of related services that are generally applicable to all DOE students in the Bronx with related services on their IEP. These policies and practices challenged by the class can be remedied through class-wide injunctive relief—as evidenced by the proposed Settlement

14

Agreement providing substantial injunctive relief to proposed class members described herein.

**B.      Preliminary Approval of the Proposed Settlement Agreement Is Proper.**

In granting preliminary approval of a settlement of a class action, a court must decide that the settlement at issue is "fair, reasonable, and adequate," and determine that "the settlement is not the product of collusion." *Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010); *see also* Fed. R. Civ. P. 23(e). Class-action settlements such as this one are generally subject to a two-step approval process: during the first step, a court grants preliminary approval, wherein it determines that the agreement "is the result of serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009); *see also In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The district court must explore these factors, but the decision to approve or reject a settlement is committed to the discretion of that court. *See, e.g.*, *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties. In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at * 3 (S.D.N.Y. Nov. 27, 2009) (citations and internal quotation marks omitted).

If a proposed settlement receives preliminary approval, the parties then provide notice to the class as ordered by the court. In a Rule 23(b)(2) class action, a district court has broad discretion in the notice provided to class members. *See Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 92 n.36 (E.D.N.Y. 2007); *see also Battle v. Liberty Nat. Life Ins. Co.*, 770 F. Supp. 1499, 1521

(N.D. Ala. 1991) (23(b)(2) class-action notice requirements are subject to only "broad reasonableness standards imposed by due process").

Once a court grants preliminary approval and the parties provide notice to the class, the court then conducts a fairness hearing, and it evaluates the settlement to determine whether it is fundamentally "fair, reasonable, and adequate." *See, e.g.*, *Charron v. Wiener*, 731 F.3d 241, 247–48 (2d Cir. 2013). There is a "presumption of fairness, adequacy, and reasonableness" that "may attach to a class settlement" such as this one that is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In granting final approval, the Court will consider the nine *Grinnell* factors established by the Second Circuit.[1]

Here, the Agreement is manifestly fair, adequate, and reasonable. It provides robust, systemic relief that Plaintiffs sought when they filed their original Complaint more than three years ago. The Agreement creates policies, procedures, and practices that will decrease the DOE's reliance on RSAs, and provides needed notice and support to families when the DOE does issue an RSA. The Agreement was reached after extensive, arms-length negotiations. It represents a great civil rights victory for the Class members. Accordingly, it should be preliminarily approved.

---

[1] These factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement . . . in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement . . . to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

1.    <u>The Settlement Provides Substantial Benefits to the Class While Avoiding Unnecessary Litigation and Delay.</u>

Although Plaintiffs believe they eventually would have prevailed, the Agreement gives the Class certainty and early benefits. Most importantly, it gives them significant relief. Unlike the risks and costs inherent in such protracted litigation, the Agreement will confer significant, timely benefits to the Class.

The Agreement first contains provisions aimed at increasing the DOE's capacity to provide related services through DOE providers by increasing funding to the DOE's Related Service Scholarship and Loan Forgiveness Programs, increasing the number of OT supervisors to aid in OT case management, and by establishing a timeline for allocating funds to fill projected related service provider vacancies. These provisions are aimed at decreasing the need to issue RSA vouchers to students.

In the event the DOE is unable to identify a DOE or contract provider to fulfill a student's related services mandate, the Agreement establishes a variety of policies and procedures to ensure that the DOE issues an RSA to the student in a timely manner, provides needed support to parents whose student has received an RSA, improve the directory of independent providers included with RSAs, and provide make-up services to students to account for services missed between the beginning of the school year, or effective date of the related services recommendations on their IEP, and the commencement of services. These provisions are aimed at addressing the significant problem of a very large numbers of RSA vouchers going unused entirely, as well as the issue of vouchers only resulting in services after a lengthy delay during which the student is not receiving necessary services.

The Agreement also contains robust monitoring and enforcement provisions. Under the Agreement the DOE will provide Class counsel with confidential annual reports including a

variety of data regarding the number and timing of vouchers issued and the utilization rates for those vouchers. The DOE will also provide Class counsel with copies of various notices required under the Settlement Agreement, including the written information to be provided to parents with RSA vouchers, notifications to Principals and RSA liaisons about relevant policies, and internal guidance for tracking any complaints received about the RSA process. Should Class counsel identify issues with the DOE's compliance with the Agreement, the Parties will first attempt to resolve those issues before seeking any assistance from the Court.

      2.    <u>The Settlement Is Fair, Adequate, and Reasonable.</u>

The Settlement Agreement is the result of extensive, arm's-length negotiations between experienced counsel, and was aided by the expertise of joint expert Dr. Kristie Patten, Chair of the Department of Occupational Therapy at New York University.[2] In addition to chairing the Department, Dr. Patten is an occupational therapist with a PhD in Educational Psychology whose work examines the efficacy of interventions utilized in public schools for students with autism spectrum disorders.[3] She was also the Principal Investigator of the NYU Steinhardt's ASD Nest Program, an inclusive program for autistic students at DOE schools. She has published and presented nationally and internationally on topics related to examining the efficacy of public school interventions and other topics.[4]

The negotiations were exceptionally informed and consisted of countless teleconferences and numerous in-person meetings over the course of over two years. The Agreement hews

---

[2] *See* Kristie Patten, New York University Steinhardt School of Culture, Education, and Human Development, https://steinhardt.nyu.edu/people/kristie-patten.

[3] *Id.*

[4] *Id.*

closely to Dr. Patten's expert recommendations, made after interviewing a variety of stakeholders and reviewing relevant documents.

       3.     <u>The Settlement Was Crafted by Experienced Counsel for Both Plaintiffs and Defendants.</u>

The opinion of "experienced and competent counsel in favoring a settlement" should be "accorded great weight." *In re McDonnell Douglas Equip. Leasing Secs.*, 838 F. Supp. 729, 740 (S.D.N.Y. 1993). The Agreement here was negotiated by experienced and reputable class action counsel. Specifically, Class counsel are highly qualified litigators with expertise in the area of class actions targeted to improve access to governmental programs and services, including to educational services at public schools. Seaborn Decl., ¶¶ 5-11.

Counsel for the DOE is also well-qualified and familiar with the DOE's obligations. Furthermore, the fact that the DOE is a public entity and approves the settlement is yet another factor that favors the approval of the settlement. *See, e.g.*, *E.E.O.C. v. Bell Atl. Corp.*, WL 31260290, at *3 (S.D.N.Y. Oct. 9, 2002) ("The approval of the settlement by . . . a government party . . . weigh[s] in favor of finding this a fair, adequate, and reasonable settlement.").

Thus, the Agreement addresses critical issues relating to the provision of related services to students with disabilities at DOE schools in the Bronx. Accordingly, it is fair, adequate, and reasonable, and warrants preliminary approval

**C.    <u>The Court Should Direct Distribution of the Notice of Settlement.</u>**

Fed. R. Civ. P. 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Actions under Rule 23(b)(2), like this one, have no strict notice requirements, leaving the form and method of notice to the Court's discretion. *See* Fed. R. Civ. P. 23(c)(2). In a class settlement, notice must be given of the proposed terms for payment of fees and costs "in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

The form of the Notice and a short form notice, Seaborn Decl., Ex 4 at Exhibit A, and method of distribution has been agreed to by the Parties.

The substance of the notice is designed to inform class members, as well as third parties, of the primary features of the Agreement, the ability to seek make-up services for missed related services, the effect of the Agreement in releasing class members' claims, the terms under which the parties will resolve fees and costs claims, the procedures and deadline for submitting objections, and ways to obtain more information. *See Id.* As set forth in the Agreement, Plaintiffs recommend to the Court that notice to the Class be provided as follows:

Plaintiffs' counsel and Defendants will each post in a prominent place on their respective websites a copy of the Notice and Short Form Notice. Plaintiffs' counsel will further distribute the notice to stakeholders, and Plaintiff BILS will post the Notice on its website and social media. Additionally, Defendants will email the Notice and Short Form Notice to the families of all current Class Members (current as of the date of Preliminary Approval) for whom the DOE has email addresses. The DOE has regular communication with DOE families by email.

This combination of methods for distributing the Notice will ensure that Class members learn about the Settlement and their opportunity to object or request to speak at the Fairness Hearing. The parties have devised this plan in light of many Class members currently receiving remote instruction due to the COVID-19 pandemic and related limitations on parents entering school buildings, and thus being less likely to encounter a Notice posted in a school building or at the Borough Office. Additionally, the redundancy of emailing the Notice to current Class members for whom the DOE has email addresses, distributing the Notice to stakeholders, and posting the Notice online, should be well-designed to reach the maximum number of Class members.

Class members as well as third parties may object to (or otherwise comment on) the Agreement by submitting their objections to Class counsel, the DOE, and the Court. Objections may be accepted in writing by no later than a date set by the Court.

**D.      <u>The Court Should Approve the Proposed Scheduling Order.</u>**

Below is a proposed timeline for issuance of notice, deadlines for objections and written responses to objections, if any, a date for the Fairness Hearing to determine final approval, and related orders and deadlines.

- The Parties will post the Notice and take the other steps described in the Parties' plan for disseminating the notice within thirty days of the Court granting Preliminary Approval.

- The deadline for objections by Class members will be thirty days before the Fairness Hearing.

- The parties will provide declarations to the Court attesting that they each disseminated the Notice by at least twenty-one days before the Fairness Hearing.

- The parties will respond to any timely filed objections to the Settlement, and Plaintiffs will file a Motion for Final Approval of Settlement by twenty-one days before the Fairness Hearing.

- The Fairness Hearing will be at a date to be determined by the Court in accordance with FRCP 23 and 28 U.S.C. § 1715 of the Class Action Fairness Act, but in any event at least 104 days after the Court grants preliminary approval of the proposed settlement.

## V.  CONCLUSION

Plaintiffs respectfully request that the Court certify the proposed Class, appoint the Plaintiffs as Class representatives, appoint Plaintiffs' counsel as Class counsel, order preliminary approval of the Agreement, approve the form of the Notice, and issue the proposed scheduling order, including a date for the Fairness Hearing.

Dated:  January 22, 2021
       New York, New York

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

_____
Rebecca C. Serbin
Stuart Seaborn
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10117-5621
Tel:  (212) 644-8644
Fax:  (212) 644-8636
*Attorneys for Plaintiffs*

22